E. H. SMITH ET AL. v. ELIZABETH MILLER ET AL.

(Case No. 1914.)

1. CONSTRUCTIVE NOTICE.— A purchaser of land is not charged with notice of a claim thereto afterwards asserted by a tenant in possession, who was a tenant of his vendor at the time of the purchase. Under such circumstances the mere occupancy of the land by the tenant cannot be held to require an inquiry to be prosecuted further than to ascertain the existence of the tenancy.

2. POSSESSION — NOTICE.— The effect of possession of land by a third party is simply to put persons desiring to purchase on inquiry; it does not determine what the inquiry shall be, or of whom it shall be made. (Citing Eylar v. Eylar, 60 Tex., 319.)

3. SAME — EQUITY.— If one known to be a tenant in possession under a vendor afterwards asserts title as against the purchaser, under an unrecorded title from a former vendor, about which he was ignorant when he accepted the tenancy, his occupancy of the land cannot charge the purchaser with notice of any right in him inconsistent with his tenancy.

4. SAME.— Under such circumstances, nothing short of a repudiation of the tenancy, brought home to the purchaser before the purchase, can charge the purchaser with notice of the tenant's title.

APPEAL from Fannin. Tried below before the Hon. R. R. Gaines.

Suit brought by William Miller and appellee, Elizabeth, his wife, against William C. Whitsett and appellants, J. L. Smith and wife, E. H. Smith; alleging that, in January, 1865, plaintiff Miller, by a verbal contract, purchased from one James M. Collins two tracts of land in Fannin county, embracing together five hundred and ninety-nine and one-half acres; that by the terms of the contract Miller was to pay Collins $1,500 for the land; that in February, 1865, Collins and Miller had a settlement of accounts, when Collins was found to be indebted to Miller $1,000, which, by agreement, went in part payment of the purchase money; that Miller went into possession of the premises and made improvements upon the land; that subsequently Miller paid Collins $300, and they tendered into court $400 to cover any amount that they might be adjudged to owe, and asked for a decree enforcing specific performance of said contract. Plaintiffs alleged further that Collins, after the verbal contract, conveyed the premises to W. C. Whitsett, who, on November 10, 1871, conveyed to appellant E. H. Smith, the wife of appellant J. L. Smith; that Whitsett and Smith had full knowledge of Miller's interest when the conveyances were made.

December 22, 1871, defendants answered by a general demurrer, a general denial, and defendants Smith and wife, by special plea, filed a cross-bill against plaintiffs, setting up the purchase by Whitsett from Collins, and the sale by Whitsett to Mrs. Smith; they al-

leged that, January 1, 1871, Whitsett, by a verbal contract, agreed to exchange the premises in controversy with Mrs. Smith for a certain tract she owned, but the trade was not consummated until November 10, 1871, when deeds were passed between them for the respective tracts of land; that in the early part of 1870, Miller had compromised whatever claim he had to the land by renting the premises from Whitsett for the year 1870, and on the 2d of January, 1871, he had again rented the premises from appellant Smith, and executed to Smith a rental contract, agreeing to cultivate the place in corn and cotton, and to pay as rent one-third of the corn and one-fourth of the cotton, and return the place in the following November in as good repair as at that time; that Smith and wife never knew that Miller claimed the land as his own, but did know of his rental contract when they traded with Whitsett; that the land they conveyed to Whitsett was of equal value with the premises they received. Appellants prayed for the recovery of the land Whitsett disclaimed. They amended their answer, and pleaded that the alleged verbal contract between Collins and Miller was in violation of the statute of frauds. They denied that Collins was ever indebted to Miller, but charged that Miller was largely indebted to Collins, and filed receipts of Miller showing that fact. In 1875 appellees amended, alleging that, in February, 1865, a complete settlement was made between Collins and Miller, which effected as its result payment for the land. August 23, 1882, plaintiiff Elizabeth Miller and the children of W. C. Miller filed their supplemental petition containing a general demurrer, general denial and a plea of not guilty. On the same day the heirs of W. C. Whitsett were dismissed from the suit, J. B. Clark was made a guardian *ad litem* for the minor children of W. C. Miller. A jury found for plaintiffs, and required them to pay defendants $200, with interest at eight per cent. per annum from January 1, 1868. Upon this verdict the court decreed the premises to plaintiffs and gave judgment in favor of defendants for $442.40.

*Richard B. Semple*, for appellants.

*Jas. Q. Chenoweth*, for appellees.

DELANY, J. COM. APP.— This case was upon the former appeal submitted to the commission of appeals by consent of parties.

We shall therefore follow the opinion delivered on the former appeal, without stopping to consider whether we concur fully with the views expressed or not. Shannon *v.* Stell, at last Tyler term.

We will, then, consider the proof as sufficient to sustain the parol contract, and that the plaintiffs were entitled to a decree for specific performance, provided it clearly appeared that Mrs. Smith was affected with notice when she bought.

We will also leave out of view the question of estoppel, and will consider the case upon the supposition that the plaintiff Miller was not estopped by his tenancy to assert his rights to the land.

This will leave only the question of notice to be examined.

Upon this subject the court, in the third paragraph of the charge, instructed the jury that, if they were satisfied that Miller had made the parol contract with Collins, as alleged; had made the payments, had taken possession and made valuable improvements, etc., they would find for the plaintiffs, unless they "find defendant E. H. Smith is a *bona fide* purchaser of the land without notice, either actual or constructive, of the plaintiffs' claim. . . . As to what constitutes actual or constructive notice, I refer you to the sixth paragraph of this charge."

Paragraph 6 is as follows:

"Notice may be either actual or constructive. Actual notice is knowledge of the fact, brought home to the party to be affected by it.

"Constructive notice is knowledge of any fact which would put a prudent man upon inquiry.

"Possession of real estate, by a claimant thereto, is a circumstance of this character ordinarily, and is, as a general rule, constructive notice to a purchaser of the claim of the possessor."

Then comes the seventh paragraph as follows:

"If the defendants, before or at the time of the conveyance from Whitsett to E. H. Smith, knew, from any source, that Wm. C. Miller claimed to have bought the land in controversy of J. M. Collins before Collins' conveyance to Whitsett, or if at the time of the conveyance by Whitsett to Mrs. Smith, . . . Miller was in possession of the land in controversy, claiming it under an alleged parol purchase from Collins, then Mrs. Smith is not a *bona fide* purchaser without notice, and the defendants cannot defeat a recovery by plaintiffs on that ground."

Appellants in their third assignment of error question the correctness of this part of the charge, and with good reason, as we think.

In the first place, however correct the charge may be as the announcement of a general principle, it is not adapted to the facts of this case.

In the second place, the charge by repetition gives an undue weight

and emphasis to the fact of Miller's possession, while under the facts of the case its importance is very much diminished.

Suppose that at some former period Mrs. Smith knew that Miller claimed under a supposed purchase from Collins (though there is no proof of that fact), still, after his lease from Whitsett in 1870, and from her in 1871, she could not be required to suppose that he persisted in a claim which he had abandoned when he became a tenant. And certainly his possession of the land could not be constructive notice to her of a claim wholly inconsistent with his tenancy.

The effect of possession is simply to put persons who desire to purchase upon inquiry, and it does not determine what the inquiry shall be or of whom it shall be made. Justice Stayton in Eylar v. Eylar, 60 Tex., 319.

But a person in possession of land may, by his own acts, divest his possession of those attributes which cause it to put purchasers upon inquiry.

If A., who is in possession of land conveys to B., and the deed is duly recorded, then a purchaser from B. need not notice the possession of A. Eylar v. Eylar, *supra.*

Now Miller's position in this case is little or no better than that of A. He had held the land for some years, claiming under a parol purchase from Collins. When he learned that Collins had conveyed the land to Whitsett, he made an agreement with the latter by which he renounced his claim to the land and took a lease.

After the land had been sold to Mrs. Smith, but before it was actually conveyed, he took a lease from her — she being fully informed of his previous lease from Whitsett.

But he says that he took these leases by mistake, and in ignorance of his rights, and is therefore not estopped by them. Be it so.

Let it be admitted that he may still dispute the claim of Mrs. Smith. Still that does not affect the question of notice. Mrs. Smith did not know that he was acting under a mistake and if any person must suffer by it he must be that person.

He cannot claim that his possession must still be notice to her of a claim which he would have persisted in asserting but for the mistake.

Under the circumstances, our opinion is that nothing short of an open, unequivocal renunciation of the tenancy, brought home to the knowledge of Mrs. Smith before her purchase, would be sufficient. See Carter v. La Grange, 60 Tex., 636; also, Satterwhite v. Rosser, 61 Tex., 166. Mere refusal to pay the rent would not do, because that might arise from a variety of causes.

As we think the case should be sent back for another trial, we call attention to the last paragraph of the charge, though it has not been assigned as error. It is as follows:

"If defendants procured a lease of the land from W. C. Miller, and Whitsett acted as their agent in procuring the lease, then I charge you that defendants, in taking the lease, are chargeable with a knowledge of all facts within the knowledge of Whitsett concerning Miller's claim."

Whatever may have been the testimony upon the first trial, from which the former appeal was taken, there is certainly nothing in the record now before us to show that Whitsett acted as the agent of Mrs. Smith.

It is true that Miller states in general terms that he took the second lease from Whitsett, that he signed it without reading, and did not know that it was a lease from Smith and wife.

Whitsett and J. L. Smith both state the facts in detail, and from their account the only part which Whitsett took in the matter of the contract was to reduce to writing the memorandum of the lease. This he did at the request of J. L. Smith.

We do not consider that there is necessarily any conflict between the testimony of Miller and that of the other two witnesses.

Miller's statement is vague and incomplete, giving only his general recollection of the matter, and influenced, probably, by the fact that the lease was written out and presented to him by Whitsett.

This was done at the house of Whitsett, where Miller had stayed all night, and, in the course of the evening, had talked generally with all the parties on the subject; but the agreement was made between him and J. L. Smith.

In the morning early, before Miller was up, Smith left the house, and, thinking that Miller might wish to leave before his (Smith's) return, informed Whitsett of the terms of the lease, and requested him to put it in writing so that Miller could sign it. This was done, and Miller had signed the lease and left the place before the return of Smith.

If these were the facts, Whitsett's act of writing the agreement certainly did not render him the agent of J. L. Smith in making the contract of lease. Much less would it render him the agent of Mrs. Smith.

There is still another view of this subject. This land was bought with the separate property of Mrs. Smith. If she obtains the title, it will be her separate property.

Now it is held in some states that where the husband purchases

land for the wife, and pays for it with her separate funds, notice to him of an unrecorded mortgage is not notice to the wife. Snyder *v.* Sponable, 1 Hill (N. Y.), 567; 7 Hill, 427; Wade on Notice, sec. 680; Lead. Cas. in Eq., vol. 2, pt. 1, page 117, ed. 1852.

The decisions seem to proceed, in part at least, on the ground that the husband is not to be regarded as an ordinary agent of the wife. Whether this would be the rule of decision in Texas, under our system of marital rights, it is not necessary for us to determine in this case.

Our opinion is that the judgment should be reversed and the cause remanded.

REVERSED AND REMANDED.

[Opinion adopted January 16, 1885.]